**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>        Plaintiff,<br><br>        v.<br><br>U.S. DEPARTMENT OF DEFENSE, DEFENSE INFORMATION SYSTEMS AGENCY,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 07-2003 (EGS)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

Plaintiff, Citizens for Responsibility and Ethics in Washington ("CREW"), brings this action against the Defense Information Systems Agency ("DISA") of the United States Department of Defense ("DOD") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff seeks all email communications from certain email addresses associated with the Republican National Committee ("RNC") that came into or went out of any email systems maintained or controlled by the White House Communications Agency ("WHCA"). Pending before the Court is Defendant's Motion for Summary Judgment. Upon consideration of the motion, the response and reply thereto, the applicable law, and the entire record, Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**, without prejudice.

**I.    BACKGROUND**

CREW is a non-profit corporation "committed to protecting the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials." Compl. ¶ 4. In order to disseminate information about public officials and their actions, CREW relies on government records made available to it under FOIA. Compl. ¶ 4.

DISA is a combat support agency that is responsible for all aspects of "global net-centric solutions" to serve the needs of the President, Vice-President, Secretary of Defense, and others. Decl. of Laurie Ann Kwiedorowicz ("Kwiedorowicz Decl.") ¶ 2. Among other things, DISA provides advanced information technology support to the White House Military Office ("WHMO") and WHCA. Kwiedorowicz Decl. ¶ 2. WHMO is a component of DOD and "provides all advice and services to the President and the White House regarding military support." Kwiedorowicz Decl. ¶ 3.

WHCA, in turn, is a component of WHMO. Kwiedorowicz Decl. ¶ 4. WHCA provides "worldwide communications capabilities to the President and his staff," which includes maintaining the "whmo.mil" internet domain and providing usernames and email accounts ending in "whmo.mil" to DOD personnel who work in WHMO. Kwiedorowicz Decl. ¶¶ 4-5. While WHCA and DISA are separate components of DOD, WHCA's funding is provided through DISA's

appropriation budget and DISA manages all personnel actions of WHCA's military and civilian employees.  Kwiedorowicz Decl. ¶ 6.

In a letter dated May 3, 2007, CREW submitted a FOIA request to DISA for certain records maintained by WHCA and sought expedited processing of that request.  See Compl. Ex. 1, Pl.'s FOIA Request at 1, 3.  Specifically, CREW requested "[a]ny and all emails that came into or went out of any email system maintained or controlled by WHCA between January 1, 2001 and the present that were from or to the following email addresses: (1) gwb43.com; (2) rnchq.org and (3) georgebush.com."[1]  Def.'s Statement of Material Facts ("SMF") ¶ 1; Pl.'s FOIA Request at 1. DISA acknowledged receipt of the request on May 8, 2007, but advised CREW that, due to a backlog of FOIA requests and limited resources, DISA would be unable to comply with the statutory time requirement for processing CREW's request.  Compl. Ex. 2, Letter from DISA to CREW (May 8, 2007).  DISA estimated, however, that CREW's request would be processed and completed within 90 days. After more than six months elapsed without a response from DISA, CREW filed the instant action on November 6, 2007, seeking to compel DISA to comply with CREW's FOIA request.  Compl. ¶¶ 2, 23.

---

[1] CREW also sought Karl Rove's telephone logs, but those phone logs are no longer at issue in this case.  See Def.'s SMF ¶ 2 ("As agreed by the parties, DISA's search for telephone logs is not at issue in this case."); Pl.'s Opp'n Br. at 1 n.1 ("[P]laintiff is not pursuing the telephone log portion of the request.").

Following the commencement of CREW's lawsuit, the parties agreed on a schedule for processing CREW's request. *See* Docket No. 8, Third Meet and Confer Statement ¶ 2 (Apr. 2, 2008). Pursuant to this agreement, DISA identified and produced thousands of pages of potentially responsive emails, although some communications were redacted or withheld pursuant to FOIA Exemptions 2, 5, and 6. *See* Docket No. 10, Def.'s Status Report at 1 (May 5, 2008); Docket No. 11, Def.'s Status Report at 1 (June 2, 2008). The parties conferred further and determined that the only remaining issues were CREW's challenges to "(1) defendant's search for responsive documents; (2) defendant's use of FOIA Exemption 5; and (3) defendant's redactions of some individuals' names and email addresses." Docket No. 14, Parties' Joint Status Report and Request for Briefing Schedule at 1 (Aug. 8, 2008). On November 14, 2008, defendant filed its motion for summary judgment on these issues. Based on information provided in defendant's motion for summary judgment, CREW conceded the propriety of DISA's redactions under FOIA Exemptions 2 and 6. *See* Pl.'s Opp'n Br. at 1. Accordingly, the only issues remaining before the Court are (i) the reasonableness of DISA's search, and (ii) the application of the deliberative process privilege - FOIA Exemption 5.[2]  *See* Def.'s Reply Br. at 1.

---

[2]   Defendant had also asserted the presidential communications privilege with respect to a communication identified in Group 10. *See* Def.'s Vaughn Index. In its reply brief, however, defendant indicates that it made a discretionary release of that

## II. STANDARD OF REVIEW

### A. Rule 56

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When reviewing a motion for summary judgment in a FOIA matter, the Court reviews the agency's decision *de novo*. *Assassination Archives and Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003).

### B. FOIA

FOIA provides a "statutory right of public access to documents and records" held by federal government agencies. *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982). "The central purpose of FOIA is to 'open[] up the workings of government to public scrutiny' through the disclosure of government records." *Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir.

---

communication. Def.'s Reply Br. at 1 n.1. Accordingly, "the only withholdings still in dispute are those made pursuant to the deliberative process privilege." Def.'s Reply Br. at 1 n.1.

1984) (quoting *McGehee v. CIA*, 697 F.2d 1095, 1108 (D.C. Cir. 1983)).  Accordingly, FOIA requires agencies of the federal government to release requested records to the public unless the documents fall within one or more of nine specific statutory exemptions.  5 U.S.C. § 552; *see Burka v. U.S. Dep't of Health and Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) ("Because FOIA establishes a strong presumption in favor of disclosure, requested material must be disclosed unless it falls squarely within one of the nine exemptions carved out in the Act." (internal citation omitted)).  These statutory exemptions must be narrowly construed in favor of disclosure.  *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976).  The government bears the burden of justifying the withholding of any requested documents through agency affidavits, an index of withheld documents, or both.  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991); *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 861 (D.C. Cir. 1980).

"In a FOIA case, the Court may award summary judgment solely on the basis of information provided in affidavits or declarations when the affidavits or declarations are relatively detailed and non-conclusory, and describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either

contrary evidence in the record nor by evidence of agency bad faith." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.C. Cir. 2009) (internal citations and quotations omitted).

### III. ANALYSIS

#### A.   **Adequacy of Defendant's Search**

To prevail on a motion for summary judgment in a FOIA case, an agency must show "beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *see also Defenders of Wildlife*, 623 F. Supp. 2d at 91 ("The agency bears the burden of showing that its search was calculated to uncover all relevant documents."). Because the agency is the possessor of the records and is responsible for conducting the search, the Court may rely on "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena v. U.S. Coast Guard, FOIA/PA Records Mgmt.*, 180 F.3d 321, 326 (D.C. Cir. 1999) (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). The adequacy of an agency's search is measured by a "standard of reasonableness" and is "dependent upon the circumstances of the case." *Weisberg*, 705 F.2d at 1351. If the record leaves

"'substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper.'" *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).

Plaintiff's FOIA request sought all emails that came into or went out of any email systems maintained or controlled by the WHCA between January 1, 2001 and the present that contained the following email addresses: gwb43.com, rnchq.org, and georgebush.com. Compl. ¶ 19. After receiving the request, personnel at WHCA searched "(1) all 'active' emails of current users of the 'whmo.mil' email domain (e.g., emails in the user's Inbox, Sent Items, and Deleted Items), and (2) all 'archived' emails[3] of former account users." Kwiedorowicz Decl. ¶ 12. Using an electronic keyword search, any active or archived emails containing the terms "gwb43.com," "rnchq.org," or "georgebush.com" in the "to," "from," "cc," "bcc," "subject," or message field were identified for further review along with any attachments to the emails. Kwiedorowicz Decl. ¶ 13. Approximately 3776 pages of potentially responsive materials were identified, of which 2301 were produced to plaintiff. Kwiedorowicz Decl. ¶ 14. WHCA dedicated approximately 365 man-hours to complete this search. Kwiedorowicz Decl. ¶ 14.

---

[3]   WHCA started archiving emails of former account users in October 2005. Kwiedorowicz Decl. ¶ 12.

CREW argues that defendant has failed to establish that it conducted a reasonable search because defendant (i) searched only the unclassified "whmo.mil" email domain, Pl.'s Opp'n Br. at 4, and (ii) failed to search or otherwise account for emails pre-dating October 2005.  Pl.'s Opp'n Br. at 5.  The Court will address both arguments in turn.

First, with regard to the classified emails, defendant explains that it limited its search to the "whmo.mil" domain because it is "the only *unclassified* email domain maintained or controlled by WHCA."  Kwiedorowicz Decl. ¶ 12 (emphasis added).  The emphasis on "unclassified" is important because "WHCA's classified email system does not permit a user of that system to send emails to or receive emails from an unclassified email system."  Decl. of Benjamin Pauwels ("Pauwels Decl.") ¶ 2.  It therefore would have been impossible for any of the RNC-related communications requested by plaintiff to be transmitted through WHCA's classified email system.  *See* Pauwels Decl. ¶ 2 ("[I]t is impossible for emails to be sent from a WHCA classified email system to an unclassified email system, such as georgebush.com; rnchq.org; and gwb43.com.  Likewise, it is impossible for emails to be received by a WHCA classified email system from an unclassified email system, such as georgebush.com; rnchq.org; and gwb43.com.").  In other words, as the only unclassified email domain maintained or controlled by WHCA, "whmo.mil" is the only

9

email system "capable of sending an email to or receiving an email from unclassified email addresses, such as georgebush.com; rnchq.org; and gwb43.com." Pauwels Decl. ¶ 2. Because no other email domains maintained or controlled by WHCA could contain potentially responsive emails, the Court concludes that WHCA's decision to limit its search to the unclassified "whmo.mil" email domain was reasonable.

Plaintiff next argues that defendant's search was inadequate because "defendant failed to search or otherwise account for email predating October 2005." Pl.'s Opp'n Br. at 5. This argument is based on the fact that WHCA did not begin archiving emails of former account users until October 2005. *See* Kwiedorowicz Decl. ¶ 12. Defendant contends that its search was reasonable because all active and archived emails were searched regardless of the email's date of creation, *see* Pauwels Decl. ¶ 3 ("No date restrictions were employed in WHCA's search for responsive documents."), and that, as a result, numerous emails were produced to plaintiff that were sent or received before October 2005. Pl.'s Opp'n Br. at 3; *see also* Def.'s Ex. N (sampling emails predating October 2005 that were produced to plaintiff); Kwiedorowicz Decl. ¶ 12 ("While the archived .PST folders were created as early as October 2005, the actual emails that were archived would in some instances date back prior to October 2005.").

While the Court concludes that this evidence is sufficient to establish the reasonableness of defendant's *electronic search* for documents predating October 2005, defendant has failed to adequately respond to plaintiff's contention that "to the extent [emails pre-dating October 2005] are no longer maintained electronically, defendant [is] required to search for paper copies of the emails."  Pl.'s Opp'n Br. at 5.  Rather than address plaintiff's underlying concerns regarding the adequacy of the department's search for these documents, defendant vaguely protests that it is "mere speculation" that additional emails predating October 2005 were preserved in paper form.  *See* Def.'s Reply Br. at 4 ("The mere speculation that some additional responsive emails may not have been preserved electronically, and the further speculation that these emails would have been preserved in paper form, cannot support requiring the agency to engage in a burdensome and fruitless search through its hard copy files.").  The Court finds defendant's response unpersuasive in light of its failure to aver "that all files likely to contain responsive materials . . . were searched."  *Valencia-Lucena*, 180 F.3d at 326; *see also Oglesby*, 920 F.2d at 68 ("It is not clear from State's affidavit that the Central Records system is the only possible place that responsive records are likely to be located.  At the very least, State was required to explain in its affidavit that no other record system was likely to produce

responsive documents."). Accordingly, the Court concludes that defendant has failed to demonstrate "beyond material doubt" that its search with regard to emails predating October 2005 was "reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351.

For these reasons, the Court **GRANTS** defendant's motion for summary judgment as to the adequacy of its search for emails from October 2005 to the present, and **DENIES** without prejudice defendant's motion for summary judgment as to emails pre-dating October 2005, recognizing that defendant's searches may have been adequate and may only suffer from a lack of documentation.

### B. Defendant's Withholdings Pursuant to the Deliberative Process Privilege

Exemption 5 of FOIA permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This provision applies to all documents which are normally privileged from discovery. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975). While Exemption 5 should be construed as narrowly as possible, *see Coastal States*, 617 F.2d at 868, the "deliberative process" privilege falls squarely within this exemption. *See Senate of Puerto Rico v. Dep't of Justice*, 823 F.2d 574, 584-85 (D.C. Cir. 1987).

The deliberative process privilege may be invoked by an agency upon the showing that the communication in question is both predecisional and deliberative.  *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (citing *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992)).  A decision will be considered predecisional if "it was generated before the adoption of an agency policy."  *Coastal States*, 617 F.2d at 866.  Deliberative communications are those "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Sears, Roebuck & Co.*, 421 U.S. at 150.  Documents protected by the deliberative process privilege are those which would prematurely reveal the personal opinions of the author or the views of the agency on a decision not yet finalized at the time the document was created.  *See Coastal States*, 617 F.2d at 866.

The rationale behind the deliberative process privilege is that public disclosure would prevent "the full and frank exchange of ideas" from "flow[ing] freely."  *Mead Data Cent. v. Dep't of the Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977).  The privilege serves to assure agency employees that they can provide a decisionmaker with their uninhibited opinion without fear of public scrutiny, to prevent premature disclosure of proposed policies, and to protect against public confusion through the

13

disclosure of a document advocating or discussing reasons for policy decisions that were ultimately not adopted. *See Am. Petroleum Inst. v. EPA*, 846 F. Supp. 83, 88 (D.D.C. 1994).

In this case, defendant has withheld information in Groups 1-17 of its Vaughn index under the deliberative process privilege. *See generally* Def.'s Ex. M, Def.'s Vaughn Index. Plaintiff argues that defendant's Vaughn index reveals that many of these alleged deliberative processes are not the type of pre-decisional discussions that merit protection under the privilege. CREW identifies "three broad categories of information" that were improperly withheld by defendant pursuant to Exemption Five: (i) discussions about decisions already made; (ii) discussions not concerning any policy matter; and (iii) non-deliberative discussions. *See* Pl.'s Opp'n Br. at 6-7.

### i. Documents Discussing Decisions Already Made

First, plaintiff challenges defendant's withholding of documents in Groups 3 and 5 of defendant's Vaughn index. Pl.'s Opp'n Br. at 6.[4]  Group 3 consists of an "[e]mail chain among White House and DoD personnel discussing response to a request for a replacement medal for soldier, including who has the authority to issue the replacement medal." Def.'s Vaughn Index. Group 5 consists of a "[d]iscussion among White House personnel

---

[4] Although plaintiff identifies Groups 3 and 5 as "examples," the Court is unable to find any other group of documents in defendant's Vaughn index that would fall under this category.

regarding procedures that must be followed prior to allowing governor's plane to land at Andrews Air Force Base." Def.'s Vaughn Index.  Plaintiff argues that both withholdings "discuss a decision that already has been made" and are therefore not predecisional.  Pl.'s Opp'n Br. at 6.  Plaintiff notes that the policy for replacing military medals is "well known and easily available on the internet, and was not going to be changed by the discussion of the withheld material."  Pl.'s Opp'n Br. at 6.  Similarly, plaintiff remarks that the procedures needed to land the plane were already set, and "discussion of how to meet the procedures to land the plane at Andrews Air Force Base is factual" and therefore unprotected.  Pl.'s Opp'n Br. at 6 (citing *Coastal States*, 617 F.2d at 867).

In response to these assertions, defendant filed the Supplemental Declaration of Laurie Kwiedorowicz ("Kwiedorowicz Suppl. Decl.").  Kwiedorowicz clarifies that, in Group 5, White House officials were discussing how to respond to a "request by a governor to land his plane at Andrews Air Force Base, including whether to accede to the governor's request."  Kwiedorowicz Suppl. Decl. ¶ 5.  Kwiedorowicz also explains that the communication in Group 3 discusses "how to respond to a request for replacing a Presidential coin," noting that "[n]o policy for replacing the Presidential coin appears to have been established."  Kwiedorowicz Suppl. Decl. ¶ 6; *see also* Def.'s

15

Reply Br. at 11 (explaining that "the decision in question was whether a replacement coin would be made available to the soldier, not what procedures would be established for future requests").

The Court is persuaded by defendant's supplemental submission. Both of the discussions in Groups 3 and 5 relate to future decisions and involve deliberation about the outcome of those decisions. Accordingly, the Court finds that defendant's invocation of the deliberative process privilege with respect to the withheld materials was proper, and **GRANTS** summary judgment for defendant as to Groups 3 and 5.

### ii. Documents Not Concerning Agency Policy Matter

Next, plaintiff challenges defendant's withholding of documents in Groups 2, 8-10, and 13-17, arguing that those groups "concern discussions about things that may be predecisional, but do not concern any agency policy matter." Pl.'s Opp'n Br. at 7. Citing *Jordan v. Department of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978), plaintiff argues that "[t]he deliberative process privilege only protects predecisional matters made before the adoption of agency policy." Pl.'s Opp'n Br. at 7. Plaintiff also relies on *New York Times v. Department of Defense*, 499 F. Supp. 2d 501 (S.D.N.Y. 2007), which held that "talking points and the formulation of responses to possible questions" used by the Attorney General to respond to press inquiries were "routine

operating decision[s] rather than . . . policy oriented judgment[s] to which the privilege would apply." *Id.* at 514. To the extent plaintiff correctly characterizes the law, the facts in this case support summary judgment in favor of defendant.

For example, defendant describes the withheld material in Group 2 as a "[d]iscussion among White House and WHMO personnel regarding which family members of wounded soldiers should be included for an upcoming Presidential visit." Def.'s Vaughn Index. The Court concludes that this discussion is predecisional because it concerns a decision on how to allocate limited Executive Branch resources, which is certainly a matter of agency policy. The Court also agrees with defendant that requiring disclosure of sensitive issues, such as deciding which family members of wounded soldiers will be able to meet with the President, may chill candid discussion among the President's advisors. *See Dep't of the Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 8-9 (2001) ("The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news . . . ."). A similar analysis supports defendant's withholdings in Groups 8-10 and 13-17. Thus, defendant's motion for summary judgment is **GRANTED** with respect to Groups 2, 8-10, and 13-17.

### iii. Documents of a Non-Deliberative Nature

Finally, plaintiff challenges the withholding of communications in Groups 6 and 11, arguing that they "fail to even describe a pre-decisional deliberation of any kind." Pl.'s Opp'n Br. at 7-8. Defendant's Vaughn index describes the withheld information in Group 6 as a "[d]iscussion among White House and DOD personnel discussing various aspects of upcoming meetings," and Group 11 is described as a "[d]iscussion among White House personnel relating to upcoming meeting with the President." The Supplemental Declaration of Laurie Kwiedorowicz clarifies, however, that the communication identified in Group 6 "contains a discussion of a decision that must be made before the meeting takes place regarding which briefing materials will be used in the meeting." Kwiedorowicz Suppl. Decl. ¶ 7. Persuaded that the supplemental declaration adequately describes a predecisional deliberation, the Court concludes that the information in Group 6 was properly withheld under the deliberative process privilege.

Defendant has failed, however, to provide a similar clarification for the communication in Group 11. Given the similar descriptions of Groups 6 and 11, and in light of the government's subsequent clarification of Group 6, the Court notes the possibility that defendant may have simply overlooked the need to clarify Group 11's predecisional deliberation.

Accordingly, the Court will deny summary judgment on Group 11, without prejudice, to provide defendant the opportunity to submit a supplemental declaration.

Accordingly, defendant's motion for summary judgment is **GRANTED** with respect to Group 6 and **DENIED**, without prejudice, with respect to Group 11.

### iv. Residual Groups

Plaintiff did not raise any objections to Groups 1, 4, 7, and 12.  Defendant's description of the redacted material indicates that all of the groups involve communication that is both predecisional and deliberative.  Therefore, summary judgment for defendant is **GRANTED** with respect to Groups 1, 4, 7, and 12.

## IV. CONCLUSION

Defendant's Motion for Summary Judgment as to the adequacy of its search is **GRANTED** as to communications from October 2005 to the present and is **DENIED**, without prejudice, as to communications preceding October 2005.  Defendant's Motion for Summary judgment is **GRANTED** with respect to Groups 1-10 and 12-17 of defendant's Vaughn index.  Defendant's motion is **DENIED**, without prejudice, with respect to Group 11.  An appropriate Order accompanies this Memorandum Opinion.

**Signed:     EMMET G. SULLIVAN**
**             UNITES STATES DISTRICT JUDGE**
**             September 29, 2009**